# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv241

| | |
|---|---|
| KATHERINE MARIE CYR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 6] and the Defendant's Motion for Judgment on the Pleadings. [Doc. 11].

## I. PROCEDURAL HISTORY

The Plaintiff Katherine Cyr filed applications for a period of disability and disability insurance benefits and for Supplemental Security Income on June 9, 2005 alleging that she had become disabled as of June 1, 1997. [Transcript ("T.") 73]. The Plaintiff's applications were denied initially and on reconsideration. [T. 41-4, 45-6, 47-50, 51-4]. A hearing was held before Administrative Law Judge ("ALJ") Ivar Avots on July 16, 2008. [T. 644-82].

At the hearing the onset date was amended to January 1, 2006. [T. 681]. On November 4, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 16-23]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 5-8]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

3

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

Plaintiff was 46 years old at the time of her hearing and had graduated from high school. [T. 648]. She originally alleged to be disabled exclusively by limitations from mental disorders. [T. 81-87]. Later she developed fibromyalgia, and alleged disabling pain and fatigue therefrom. [T. 104-13, 653]. After her original alleged onset in 1997, she developed alcohol dependence. The ALJ noted that "there's a lot of drinking here in the file." [T. 676]. She admitted that when her mental impairment symptoms were "very very much worse" she self-medicated with alcohol. [T. 659]. She reported that she then began using psychotropic medications, however, which gradually

4

stabilized her symptoms such that she stopped drinking in 2006. [T. 659, 677]. Therefore, at the hearing, she amended her date of onset to January 1, 2006. [T. 680]. Medical records for the years prior to her amended date of onset corroborate that severe mental symptoms occurred during the same period as her substantial alcohol usage. She experienced hallucinations [T. 411, 439], problems concentrating [T. 411], and was found "likely to have bipolar disorder." [T. 441]. Her drinking interfered with the efficacy of medication, thus hindering her treatment. [T. 441]. During her many visits to a mental health and substance abuse treatment provider in that period, she demonstrated a "long history of being an unreliable historian" [T. 440], including doubtful statements about abstinence from alcohol, and was non-compliant with substance abuse treatment. [T. 462]. She was institutionalized for detoxification on several occasions, and had multiple arrests for driving while impaired. [T. 411, 440].

After Plaintiff's amended onset date, her visits to mental health providers became dramatically less frequent. [T. 555-64, 565-70]. She demonstrated non-compliance with treatment, including ceasing medications against medical advice, [T. 562], and resuming alcohol consumption. [T. 539, 547]. Nonetheless, during an emergency room visit for treatment of back pain, her psychological and neurological examination was normal. [T. 543]. There are

5

no records of Plaintiff receiving counseling after 2006, even though she visited psychiatrists who worked to bring her mental impairments under control with medications. Her symptoms became better controlled by medications, and the dosages thereof diminished over time. [T. 149-57].

The record contains evidence of Plaintiff's mental and psychological condition in the form of a pre-onset mental evaluation, Psychiatric Review Technique (PRT), and a mental residual functional capacity evaluation (MRFC). Carolyn G. Conroy, Ph.D. recited Plaintiff's description of a significant family history of mental illness that included two relatives who committed suicide. [T. 284-87]. Plaintiff admitted significant abuse of alcohol; testing indicated a likelihood for that to continue, and it was noted that she had ceased the Alcoholics Anonymous program. [T. 284]. Dr. Conroy noted that Plaintiff was minimizing her alcohol issues. [T. 286]. She concluded that Plaintiff was coping "reasonably well" on September 12, 2005, could avoid serious interpersonal difficulties, and should be limited to a moderate stress situation with limited responsibility for performing calculations. [T.287]. After three PRTs, dated November 2004, February 2005 and November 3, 2005 [T. 312-350] with no marked limitations noted, Ben Williams, Ph.D. indicated in an MRFC that she was capable of "SRRTs [simple routine repetitive tasks] ... in low stress environments with low production demands that require [limited]

6

public contact." [T. 304-10, 306]. An MRFC performed on January 24, 2006 by Eleanor Cruse, Ph.D. was consistent with that assessment. [T. 438].

Providers at Appalachian Counseling treated Plaintiff for four months, from November 29, 2007 through March 20, 2008. Pamela Lowe-Hoyte, M.D., M.P.H. saw her three times in a sixteen-day period.[1] Notes from the total six appointments were sparse. [T. 565-570]. Dr. Lowe-Hoyte's mental status note indicated that Plaintiff's affect was animated, her mood was level, her thoughts were clear and organized, she was punctual and patient, and she was not psychotic or paranoid. [T. 565-67]. Three additional pages of notes dated and submitted after Plaintiff's hearing show two more visits to Dr. Lowe-Hoyte, in December 2009 and April 2010. [T. 638-40]. These records indicate that she was working in 2009, and "cutting down on her meds without consultation" in 2010. She discussed situational concerns at both appointments. On examination, she had appropriate affect, level mood, and clear, organized thoughts.

Near the hearing date, two more psychological evaluations and mental impairment opinions were developed by Dr. Lowe-Hoyt and by consultative evaluator Dr. Dennis Hoogerman. [T. 610-22, 581-608]. After the ALJ's

---

[1] Plaintiff had asked for a transfer to Dr. Lowe-Hoyte from another provider there because, she claimed, he had suddenly stopped her Seroquel. [T. 567]. His last note, however, reads "continue Seroquel." [T. 568]. Her switch of mental health professionals is otherwise not explained.

7

decision was issued, each provider submitted a supplemental letter critiquing the decision's interpretation of their findings and opinions. [T. 638-40, 641-43].

A physical residual functional capacity (RFC) evaluation found that Plaintiff had the RFC to perform medium work. An examination on March 3, 2006, found this RFC to still be accurate. [T. 288-303, 437].

## V. THE ALJ'S DECISION

On November 4, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 16-23]. Proceeding to the sequential evaluation, the ALJ found that Plaintiff's date last insured was March 30, 2012, and that she had not engaged in substantial gainful activity since June 1, 1997, the original alleged onset date. [T. 18]. The ALJ then determined the following severe combination of impairments: bipolar disorder, alcohol dependence in remission, lumbar strain, and fibromyalgia. [T. 18]. The ALJ concluded that these impairments did not meet or equal a listing. [T. 18]. He found that Plaintiff had the residual functional capacity to perform medium work, limited to simple, repetitive routine tasks in a non-production environment with occasional interaction with the public. [T. 19]. She had no past relevant work. [T. 21]. Considering her age, education, work experience and RFC, there were jobs in significant numbers in the national economy that she could perform. [T. 21]. Accordingly, the ALJ concluded that the Plaintiff was not

8

disabled from January 1, 2006, the amended onset date, through the date of his decision. [T. 22].

## VI. DISCUSSION

At the outset it must be noted that it is difficult to determine what, if anything, Plaintiff assigns as error. Her brief asserts no statute, regulation or specific duty that the ALJ failed to follow or fulfill, and cites no case law in support of any specific position. In the very last paragraph of her summary judgment brief to this Court, Plaintiff states

> We suggest that [the ALJ] did commit error to the prejudice of the Plaintiff in failing to accept Dr. Lowe-Hoyte's opinion's [sic] and Dr. Hoogerman's [sic], regarding the Plaintiff's non-exertional impairment. For that reason we respectfully request that the case be remanded to the Comissioner for further consideration.

[Doc. 7 at 5-6]. From this the Court gleans that Plaintiff finds some fault with the manner in which the ALJ analyzed the opinion evidence. The Plaintiff, however, does not argue what error in analysis she asserts the ALJ made. Even though it would thus appear that the Plaintiff has abandoned any such argument, the Court will, nonetheless, review the ALJ's analysis of the opinion evidence.

Plaintiff has the burden of proof to show disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502; English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). This can be met, as to mental impairments, through the findings

9

and opinions of licensed psychologists about particular limitations that mental impairments impose on mental work functions. SSR 06-03p. Those mental work functions are understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and the public, and handling work pressures in a work setting. 20 C.F.R. § 404.1545, SSR 83-14. The ALJ's responsibility is to consider all such evidence, and to weigh it in the manner set out at 20 C.F.R. § 404.1527.

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d). Among the elements the ALJ may consider in weighing opinions are supportability of the opinion through medical signs and laboratory findings, and consistency with the record as a whole. See 20 C.F.R. § 404.1527.

It appears that the Plaintiff may be attempting to argue that extensive records that pre-date her alleged onset of disability demonstrate that she had greater limitations in the mental work functions than the ALJ found. She acknowledges that these record mainly reflect her efforts to curb her alcohol

10

dependence. The records also show, however, that her limitations diminished considerably upon attainment of sobriety.

As is required in considering allegations of disability due to mental impairments, the ALJ followed the "special technique" set out at 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a. The special technique requires an ALJ to evaluate the symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b). The ALJ must also rate the degree of functional limitation resulting from the mental impairment in four functional areas on a specific scale, also known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3) and (4).

Using this method the ALJ determined that bipolar disorder and alcohol dependence in remission were severe impairments on and after January 1, 2006 (the amended onset date). [T. 18, 22]. He considered the subjective information and objective findings by Dr. Lowe-Hoyte and Dr. Hoogerman. [T. 19, 20-1]. He discussed the "paragraph B" criteria identified by them and by State Agency mental health evaluators. [T. 19, 20-1]. He relied on the three PRTs developed by State Agency evaluators [T. 312-353], over a twelve month period from late 2004 to late 2005. [T. 19]. None of the three evaluations noted any limitations worse than moderate. Consistently, the

Plaintiff was noted as moderately limited in maintaining concentration, persistence or pace. [T. 322, 336, 350]. He discounted evidence of such "B" criteria from Dr. Lowe-Hoyte and Dr. Hoogerman when he weighed all the evidence in making his determination of the Plaintiff's RFC at step four. [T. 19]. The ALJ rated Plaintiff's limitations in the four functional areas, finding that she had mild restrictions in activities of daily living and in social functioning, moderate restrictions in concentration, persistence or pace, and one or two episodes of decompensation . [T. 19]. Substantial evidence supports those findings.

At step three, the ALJ evaluated Plaintiff's impairments for whether they met Listings 12.04 (depression) or 12.06 (anxiety disorder). 20 C.F.R. Part 404, Subpart P, App 1. [T. 19]. As he noted, Listing-level severity requires at least two "marked" findings. [T. 19]. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, 12.06. Having properly found that credible evidence of that severity was not present, the ALJ did not err in finding that Plaintiff did not meet a Listing.

At step four, the ALJ weighed the available medical opinion evidence. He further discussed Drs. Lowe-Hoyt and Hoogerman's specific observations and findings. [T. 20-1]. He gave little weight to Dr. Lowe-Hoyt's PRT because of its inconsistency. [T. 20]. While she had noted that Plaintiff was stable on

12

Seroquel, and that decreasing the dosage tended to destabilize her (because of its effects on her blood sugar), Dr. Lowe-Hoyt nonetheless continued Plaintiff on the *decreased* dosage. [Id.]. He noted specifically that Dr. Lowe-Hoyte's treatment notes were devoid of reference to limitations in any functional area. [T. 21].

As to Dr. Hoogerman's evidence, the ALJ noted that he saw Plaintiff once, and found the product of that visit to be of little probative value because it occurred at the behest of Plaintiff's attorney. He noted that the severity of limitations that Dr. Hoogerman checked off on his PRT form were unsupported by his mental status examination and were inconsistent with the record as a whole. He noted the doctor's own observation that Plaintiff exaggerated symptoms, and therefore found the opinion to be of little weight because it included limitations that necessarily depended to some degree on Plaintiff's own report. The ALJ discounted the personality and IQ testing included in the evaluation, which resulted in Dr. Hoogerman's rather petulant defense of his testing modalities as well as his criticisms of what he saw as the ALJ's dismissive tone. [T. 21, 641-3]. Not to lose sight of the issue at hand, however, the particular test results the ALJ dismissed added nothing that this Court sees as proof of disabling limitations.

The ALJ found the medical evidence from Dr. Conroy to be persuasive to show that Plaintiff was doing reasonably well and could work in a moderate stress situation with limited responsibilities for performing calculations, as long as she used her medications and abstained from alcohol. He also relied on the mental and physical RFC assessments from the State Agency, for their consistency with the record as a whole.

These are permissible bases for weighing opinion evidence and for the ALJ's RFC findings. Plaintiff has demonstrated no error.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Judgment on the Pleadings [Doc. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 6] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: October 25, 2011

Martin Reidinger
United States District Judge